**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| ERIC MUHAMMAD WRIGHT,<br>　　　　Plaintiff,<br>　v.<br>CAROLYN W. COLVIN,<br>　　　　Defendant. | Case No. 15-cv-02495-BLF<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Re: ECF 17, 18] |

Plaintiff Eric Muhammad Wright appeals a final decision of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, denying his application for a period of disability and disability benefits under Title II of the Social Security Act. Before the Court are the parties' cross-motions for summary judgment, which have been fully briefed. Upon consideration of the briefing[1] and for the reasons set forth below, the Court DENIES Plaintiff's motion and GRANTS Defendant's motion.

**I.　BACKGROUND**

Wright, a United States citizen, was born on October 3, 1984. Admin. R. ("AR") 244. He attended two years of college and most recently worked as a software support engineer. *Id.* at 249. On November 4, 2010, Wright filed an application for a period of disability and disability insurance benefits, alleging disability beginning February 15, 2010. *Id.* at 19, 79. Wright claims disability resulting from sciatica, post-concussive syndrome, left foot surgery, and depression. *Id.* at 248. Wright was twenty-five on his alleged onset date. *Id.* at 96.

Wright was denied benefits initially and upon reconsideration. *Id.* at 19. He requested and

---

[1] This matter was submitted without oral argument pursuant to Civil Local Rule 16-5.

received two hearings before an administrative law judge ("ALJ"), which were held on July 26, 2012 and July 22, 2013. *Id.* at 19, 34. At the first hearing, ALJ Caroline H. Beers sent Wright to several consultative examinations—orthopedic, psychological, and neurological—after finding a conflict in the record, and heard testimony from a vocational expert ("VE"). *Id.* at 46, 49, 51, 70. At the second hearing, a different ALJ, T. Patrick Hannon, heard testimony from a different VE and from Wright himself. *Id.* at 74. On August 16, 2013, ALJ Hannon issued a written decision finding Wright not disabled and thus not entitled to benefits. *Id.* at 19–28. The ALJ's decision was affirmed by the Appeals Council on April 1, 2015, making the ALJ's decision the final decision of the Commissioner of Social Security. *Id.* at 1–4. Wright now seeks judicial review of the denial of benefits.

## II.   LEGAL STANDARD

### A.   Standard of Review

District courts "have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 USC § 405(g). However, "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). Federal courts "'leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.'" *Id.* (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014)).

A court "will disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error." *Brown-Hunter*, 806 F.3d at 492 (internal quotation marks and citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and must be more than a mere scintilla, but may be less than a preponderance." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015) (internal quotation marks and citations omitted). A court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* (internal quotation marks and citation omitted). If the evidence is susceptible to more than one rational interpretation, the ALJ's

findings must be upheld if supported by reasonable inferences drawn from the record. *Id.*

Finally, even when the ALJ commits legal error, the ALJ's decision will be upheld so long as the error is harmless. *Brown-Hunter*, 806 F.3d at 492. However, "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Id.* The court is "constrained to review the reasons the ALJ asserts." *Id.*

### B. Standard for Determining Disability

Disability benefits are available under Title II of the Social Security Act when an eligible claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

"To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, determining: (1) whether the claimant is doing substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months; (3) whether the impairment meets or equals one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity, the claimant can still do his or her past relevant work; and (5) whether the claimant can make an adjustment to other work." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (internal quotation marks and citations omitted). The residual functional capacity ("RFC") referenced at step four is what a claimant can still do despite his or her limitations. *Id.* at 1160 n.5. "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

### III. DISCUSSION

The ALJ determined that Wright had acquired sufficient quarters of coverage to remain insured through December 31, 2014. AR 21. At step one, the ALJ determined that Wright had not engaged in substantial gainful activity since his alleged onset date of February 15, 2010. *Id.* At step two, the ALJ found that Wright had the following severe impairments: "history of left

3

foot/ankle pain . . . but currently with only mild tendinosis and no tear shown on MRI." *Id.*

At step three, the ALJ concluded that Wright did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526). AR 24. Between steps three and four, the ALJ found that Wright had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b), except that Wright "would be restricted to only 4 hours of standing and walking in an 8-hour workday, and no more than occasional climbing, balancing, stooping, kneeling, crouching or crawling." *Id.* At step four, the ALJ found that Wright was capable of performing past relevant work as a software engineer, and that this work does not require the performance of work-related activities precluded by his RFC. *Id.* at 27. Thus, the ALJ determined that Wright had not been under a disability, as defined in the Social Security Act, from February 15, 2010, through the date of the decision. *Id.* at 28.

Wright challenges the ALJ's step three and four determinations, asserting that the ALJ failed to give sufficient reasons, supported by the record, for improperly discounting the diagnoses, severity, and limitations identified by Drs. Lo, Morley, Kuluva, Naraghi, Peabody, Pham, and Woodcox and rejecting symptom evidence. Wright further argues that the ALJ's RFC assessment of light work is not based on substantial evidence.

**A.     Evaluation of the Medical Evidence Regarding the Severity and Limitations of Post-Concussive Syndrome[2]**

Wright first argues that the ALJ failed to give sufficient reasons, supported by the record, for discounting the records of treating and specialist physicians that documented the severity and limitations of post-concussive syndrome. Pl.'s Mot. Summ. J. ("Pl.'s MSJ") 12, ECF 17.

"Generally, the opinion of a treating physician must be given more weight than the opinion of an examining physician, and the opinion of an examining physician must be afforded

---

[2] In addition to the arguments discussed in this section, Wright contends that the ALJ erred in failing to evaluate the limitations of "affective disorder/post-concussive syndrome/depression" in combination with severe impairments at steps four and five. Pl.'s MSJ 17. Wright asserts that accounting for the limitations of post-concussive disorder at the later steps was critical to the outcome of the claim, as they precluded work activity. *Id.* The Court discusses this argument in Part III.D, below.

4

more weight than the opinion of a reviewing physician." *Ghanim*, 763 F.3d at 1160. "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it will be given controlling weight." *Id.* (internal quotation marks, citation, and brackets omitted).

If the treating physician's opinion is contradicted by the opinion of another physician, the ALJ may reject the treating physician's opinion but only based upon "specific and legitimate reasons that are supported by substantial evidence." *Id.* (internal quotation marks and citation omitted). In determining how much weight to give a treating physician's opinion, the ALJ must consider the following factors: the length of the treatment relationship and the frequency of examination by the treating physician, the nature and extent of the treatment relationship between the patient and the treating physician, the supportability of the physician's opinion with medical evidence, and the consistency of the physician's opinion with the record as a whole." *Id.* (internal quotation marks, citation, and brackets omitted). "An ALJ may only reject a treating physician's contradicted opinions by providing 'specific and legitimate reasons that are supported by substantial evidence.'" *Id.*; *see also Bray*, 554 F.3d at 1228 ("[T]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." (internal quotation marks, citation and alteration omitted)).

### i. The DDS Opinions

Wright first contends that the ALJ erred by relying on a non-examining State Disability Determination Services ("DDS") physician to find that post-concussive disorder failed to meet the severity required for Listing 12.00C at step three. Pl.'s MSJ at 10. Defendant disagrees, however, and argues that the ALJ's RFC finding is supported by substantial evidence. Def.'s Mot. Summ. J. & Opp'n to Pl.'s MSJ ("Def.'s MSJ") 8, ECF 18.

DDS Physicians Dr. Morgan and Dr. Chiang reviewed Wright's records in January 2011 and June 2011, respectively. AR 96–123. After reviewing Wright's medical records, Dr. Morgan concluded that Wright was not disabled. *Id.* at 107. Dr. Morgan found that although Wright suffered from a mild organic medical disorder(s) and mild affective disorder(s), the evidence did

1  not establish the presence of the "C" criteria based on her finding of facts and analysis of the
2  evidence. *Id.* at 99–100, 102. She also stated that Dr. Morley's opinions were more restrictive
3  than her own because Dr. Morley's "opinion relies heavily on the subjective report of symptoms
4  and limitations provided by the individual, and the totality of the evidence does not support the
5  opinion. The opinion is without substantial support from other evidence of record, which renders
6  it less persuasive." *Id.* at 106.

Dr. Chiang similarly concluded that Wright was not disabled. *Id.* at 122. Like Dr. Morgan, Dr. Chang found that although Wright suffered from a mild organic medical disorder(s) and mild affective disorder(s), the evidence did not establish the presence of the "C" criteria based on her finding of facts and analysis of the evidence and affirmed the finding that the impairments were non-severe. *Id.* at 116. Dr. Chiang also gave less weight to Dr. Morley's opinions, concluding that they were "too restrictive based on [the] objective findings." *Id.* at 117.

Although the opinions of treating physicians are generally accorded greater weight than those of reviewing physicians, the ALJ considers other factors in evaluating a medical opinion. 20 C.F.R. § 404.1527(c). In this case, the ALJ noted that the DDS opinions were more consistent with the medical record. AR 22. Specifically, the ALJ wrote, "[w]ithout contradictory, durational medical evidence or opinions in the record, the undersigned concurs with the DDS physicians that the claimant's medically determinable mental impairment causes no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area." *Id.* at 22–23. Accordingly, the ALJ determined that Wright's mental impairment was non-severe. *Id.* at 23.

Such consistency is a valid consideration in assessing the weight given to a medical opinion. 20 C.F.R. § 404.1527(c)(4); *Thomas v. Barnhart*, 278 F.3d 947, 957 ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."); *see also* Def.'s MSJ 7–8. Additionally, as Defendant correctly states, the DDS physicians are experts in Social Security disability evaluation, and their expertise is another factor that favored giving more weight to their opinions. Defs.' MSJ 8 (citing 20 C.F.R. § 404.1527(c)(6); SSR 96-6p).

1   Finally, the ALJ also gave valid reasons unrelated to the opinions of the DDS physicians for
2   discounting the opinions of Wright's treating physicians, as discussed below. Thus, the Court
3   finds no error in the weight assigned to the opinions of the DDS physicians.

    **ii. Dr. Lo**

Wright next argues that the ALJ made two errors with respect to Dr. Lo—first, the ALJ referred to Dr. Lo as an evaluating physician as a basis to reject his diagnosis and discussion of post-concussive syndrome, and second, he dismissed Dr. Lo's records and opinions regarding the limitations of post-concussive syndrome without providing "specific and legitimate reasons," and ignored Dr. Lo's extensive examination and treatment history. Pl.'s MSJ 14.

Dr. Lo, a neurologist, saw Wright on six occasions in 2010 and one occasion in 2012. AR 397, 400, 403, 407, 416, 425, 571. Dr. Morley first referred Wright to Dr. Lo for acupuncture treatments in 2010. *Id.* at 416. In his initial report dated May 28, 2010, Dr. Lo reviewed the CT Scan performed by Alta Bates Emergency Department and an MRI from April 29, 2010, and concluded that Wright's "symptoms are consistent with postconcussion syndrome as previously diagnosed by prior neurological consultant. MRI of the brain was grossly normal, which does not rule out this diagnosis, but it only provides confirmation that there was no axonal shear injury or significant intercranial hemorrhage." *Id.* at 425–429. In 2012, Dr. Morley again referred Wright to Dr. Lo "for further consideration of medication management for chronic migraine headaches." *Id.* at 571.

As to Dr. Lo, the ALJ found that "there were no established treating source relationships, and certainly not of a durational nature." AR 24. He thus concluded that Dr. Lo was an "evaluating rather than treating neurologist." *Id.* With respect to his medical findings, the ALJ noted that Dr. Lo based his diagnoses on Wright's "subjective complaints—[without] considering the many negative lab and radiographs." *Id.* Moreover, the ALJ found that "no actual neurological signs or findings were cited to support" Dr. Lo's "diagnostic impressions." *Id.*

Whether the ALJ considered Dr. Lo a treating or examining source is unimportant because the ALJ discussed Dr. Lo's opinion, concluded that he relied on Wright's subjective complaints rather than objective findings in the record, and rejected it. *Id.*; Def.'s MSJ 6–7. Moreover, the

7

ALJ provided specific and legitimate reasons for rejecting Dr. Lo's assessment that are supported by the entire record. The ALJ stated that Dr. Lo's assessment was essentially a summary of Wright's "subjective complaints," and was therefore undermined by the ALJ's finding that Wright was not credible. "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citation omitted). A review of Dr. Lo's records reveals that they largely reflect Wright's reports of pain, with little independent analysis or diagnosis. *See, e.g.*, AR 397 (describing Wright's pain). Thus, the ALJ's adverse credibility determination supports the limited rejection of Dr. Lo's opinion because it was primarily based on Wright's subjective comments concerning his condition.

Further, the ALJ found that Dr. Lo's assessment of Wright was not supported by objective test results. For example, the ALJ stated that although "the claimant's complaints of lower extremity radiculopathy were trotted out" there was no "mention of [Wright's] relatively normal MRI, or his non-neurological lower extremity findings such as full '5/5' motor strength and so forth." *Id.* at 24. Because the ALJ is the final arbiter with respect to resolving ambiguities in the medical record, *see Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995), the ALJ reasonably rejected Dr. Lo's opinion.

### iii. Dr. Morley

Wright argues that the ALJ erred with respect to Dr. Morley because he dismissed Dr. Morley's treatment records and opinions regarding the severity and limitations of his impairments without finding "specific and legitimate reasons." Pl.'s MSJ 15, 17–18. The Court disagrees with Wright.

Dr. Morley is Wright's long-term, treating, pain management physician. The administrative record contains medical records from Dr. Morley dating from March 2010 through July 2013. AR 583. During Wright's first visit with Dr. Morley, Dr. Morley noted his claims of constant low back pain, pain in his left foot, head pain, and cervical spine pain, and inability to sit or walk for more than 5 or 10 minutes. *Id.* at 438–39. Dr. Morley diagnosed Wright with post-concussive head pain syndrome, cervicalgia, lumbar disk herniation, left probable L-5 radiculitis,

8

and internal derangement in his left foot. *Id.* at 440. Dr. Morely continued to see Wright approximately every 3 weeks through 2010. On May 26, 2010, Dr. Morley wrote that Wright "does not appear in acute distress; does not appear anxious . . . ; appears to be in moderate pain . . . ." *Id.* at 433. Dr. Morley continued to note that Wright appeared to be in moderate pain until September 2010, when he wrote that "[t]he patient does not appear to be in acute distress . . . [or] in pain . . . ." *Id.* at 395. On October 27, 2010, Dr. Morley noted that Wright's MRI was "rather benign." *Id.* at 391. Dr. Morley's records indicate, however, that Wright "appear[ed] to be in a lot of pain" again in May 2011 after his lumbar discogram dated March 15, 2011. *Id.* at 480. Several months later, Dr. Morley noted that Wright was "able to sit comfortably on the examination table without difficulty or evidence of pain." *Id.* at 505 (report from September 29, 2011). In his last report in the record, Dr. Morley noted that he was "somewhat concerned" about Wright's progress. *Id.* at 592.

The ALJ concluded that Dr. Morley's opinions lacked supportive objective evidence in the record. *Id.* at 25. Specifically, the ALJ found that Dr. Morley primarily relied on Wright's "subjective complaints," despite test results contradicting Wright's supposed symptoms. *Id.* at 22. First, although Wright complained about headaches, among other symptoms, Dr. Morley "expressed doubts that a referral to the UCSF headache clinic 'would have much to offer him.'" *Id.* at 23. Second, Dr. Morley continued to "jot down the claimant's subjective complaints by history such as post-concussive syndrome," even though "the brain MRI was negative." *Id.* at 22. Third, the ALJ noted that although a May 1, 2012, MRI of Wright's left foot showed only "mild" tendonosis without evidence of tear, Dr. Morley indicated on August 2, 2012, that Wright remained "unable to bear weight" and had "radicular symptoms." *Id.* at 24. Finally, the ALJ stated that there was "no objective medical support for [Wright's] severe limitations," including Dr. Morley's opinion that Wright could sit for "0" hours per day, given that Wright was seated during the entirety of the hearing. *Id.* at 25.

A contradiction between a medical source's assessment of a claimant's disability and the source's other notes and observations provides a clear and convincing reason for rejecting that source's opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Here, the ALJ

identified a number of significant contradictions between Dr. Morley's opinions and the test results he reported in Wright's medical records. The objective evidence in the record was minimal and benign, and did not support Dr. Morley's opinion regarding Wright's condition. In light of these contradictions, the Court finds that the ALJ's rejection of Dr. Morley's opinion is supported by more than substantial evidence and was based upon a permissible determination within the ALJ's province.

Wright argues that the ALJ ignored the bulk of Dr. Morley's records. Pl.'s MSJ 15. However, an ALJ may reject a treating physician's opinion if it is primarily based on a claimant's statements of his own symptoms that have been discounted as incredible. *Tommasetti*, 533 F.3d at 1041. Here, the ALJ's adverse credibility determination, discussed below, supports the limited rejection of Dr. Morley's opinion because it was primarily based on Wright's subjective comments concerning his condition.

### iv. Specialist Physicians

Wright argues that the ALJ erred in failing to compare the specialist physicians' records to the entire medical evidence on record. Pl.'s MSJ 16. Specifically, Wright points to the records from Drs. Kuluva, Naraghi, and Peabody. *Id.* Wright further asserts that had the ALJ not made this error, he would have found a complete, consistent, unambiguous record that was devoid of contradicting opinions. *Id.*

The administrative record shows that Dr. Kuluva performed a neurological examination on April 29, 2010. AR 370. After reviewing the MRI, Dr. Kuluva concluded that there were no abnormalities in Wright's brain, there was right extracranial soft tissue swelling, and the "clinical picture most resemble[d] postconcussive syndrome." *Id.* at 373–74.

Wright saw Dr. Naraghi, an orthopedic spine surgeon, on three occasions—December 14, 2010; June 14, 2011; and July 19, 2011. *Id.* at 383, 494, 499. During Wright's first visit, Dr. Naraghi noted Wright's functional limitations, including that he had significant difficulty walking and could only sit or stand for 10 minutes at a time. *Id.* at 383. During the same visit, Dr. Naraghi wrote that Wright stated that he had not been able to work because of the post-concussive syndrome, had difficulty staring at the computer screen, and was sensitive to light, among other

complaints. *Id.* at 383. Approximately seven months later, in July 2011, Dr. Naraghi wrote that Wright had not improved since December 14, 2010, and that his pain had apparently "become worse despite conservative care." *Id.* at 497. Dr. Naraghi concluded that Wright was "not a surgical candidate," but might be if "an additional several months of physical therapy [was] not helpful. *Id.* at 497.

Dr. Peabody, a psychologist, evaluated Wright twice in September 2012 and once in July 2013. *Id.* at 566, 594. Dr. Peabody diagnosed Wright with moderately severe depressive disorder, generalized anxiety disorder, a pain disorder, and insomnia. *Id.* at 568. He noted that Wright's prognosis was "[g]ood, in the long term, with further psychotherapy, medication, and vocational rehabilitation." *Id.* at 567. In his updated assessment, dated July 19, 2013, Dr. Peabody noted that there was "no change in [his] previous assessment of [Wright's] mental status or level of functioning." *Id.*

The ALJ considered the MRI performed by Dr. Kuluva, and concluded that it was "without acute findings." *Id.* at 22. The Court thus agrees with Defendant, and finds that the ALJ considered Dr. Kuluva's report, and determined that the objective record detracted from Wright's alleged disability. Def.'s MSJ 7. Thus, it appears that contrary to Wright's contention, the ALJ compared Dr. Kuluva's findings to the entire medical evidence of record, and concluded that it supported a finding that Wright was not disabled. *See* Pl.'s MSJ 16.

The ALJ also considered the opinions of Dr. Naraghi, although he did not identify him by name.[3] The ALJ noted that Dr. Naraghi reported that Wright was "not a surgical candidate," and that he received "conservative treatment." AR 21–22. Wright suggests that the ALJ ignored Dr. Naraghi's diagnoses of post-concussive disorder with symptoms of light sensitivity, migraines, difficulty staring at the computer screen, dizziness, and nausea. Pl.'s MSJ 16. However, as previously explained, an ALJ may reject a physician's opinion if it is primarily based on a claimant's statements of his own symptoms that have been discounted as incredible. *Tommasetti*,

---

[3] When discussing Dr. Naraghi's opinions, the ALJ referred to him only as one of Wright's "physicians." *See, e.g.*, AR 21 ("[H]is physicians ever since have repeated that he is 'not a surgical candidate.'" (citing Dr. Naraghi's report)).

533 F.3d at 1041. The ALJ's adverse credibility determination, discussed below, supports the rejection of Dr. Naraghi's diagnoses because they were primarily based on Wright's subjective comments concerning his condition.

Finally, as to Dr. Peabody, the ALJ found that although Wright alleged depression on his Disability Report, "there were no established treating source relationships, and certainly not of a durational nature," with a mental health professional. AR 24. Moreover, the ALJ noted that despite Dr. Peabody's diagnoses, he "offered no additional follow-up psychiatric or psychological treatment, or else, none was desired by the claimant. In any case, there is no evidence in the record of any durational mental health treatment for the claimant." *Id.* at 24, 27. The Court concludes that the ALJ properly considered and discounted Dr. Peabody's assessment of Wright because it did not meet the durational requirements in the Social Security Act. 20 C.F.R. § 404.1509 (an impairment "must have lasted or must be expected to last for a continuous period of at least 12 months"). The evidence thus supports the ALJ's conclusion that Wright's mental impairments were non-severe.

### B. Evaluation of Medical Evidence Regarding the Severity and Limitations of Orthopedic and Podiatric Impairments

Wright next argues that the ALJ erred by failing to provide specific and legitimate reasons supported by substantial evidence for rejecting long term, treating and examining specialist opinions regarding the severity and limitations of his orthopedic and podiatric impairments. Pl.'s MSJ 17. Wright alleges three specific errors: First, Wright contends that the ALJ failed to address the entirety of the record and ignored the records from Drs. Morley, Lo, Pham, and Woodcox. *Id.* Second, Wright argues that the ALJ erred by failing to compare treating source records or analyze the specialist physician records for internal consistency. *Id.* at 18–19. Finally, Wright asserts that the ALJ failed to consider the record as a whole regarding orthopedic and podiatric limitations. The crux of Wright's arguments is whether the ALJ gave proper weight to the physicians' opinions. Because the Court has already concluded that the ALJ gave the proper weight to the opinions of Drs. Morley and Lo, the Court considers only the ALJ's treatment of Drs. Pham and Woodcox below.

Drs. Pham and Woodcox treated Wright's foot injury. Dr. Pham treated Wright from February 2010 through May 2010. AR 375, 380. After examining Wright, Dr. Pham noted that Wright was possibly suffering from a "small stress fracture" in his left foot, placed him in a Cam walker, and instructed him to limit weight bearing and use compression wraps. *Id.* at 377. On March 5, 2010, Dr. Pham reviewed Wright's MRI results and concluded that there was "no acute fracture of the foot," but noted that there was tendonitis and synchondrosis at the site of the pain. *Id.* at 378. Dr. Pham began discussing surgery with Wright in April 2010. *Id.* at 379. In May 2010, Wright stopped seeing Dr. Pham, and instead was treated by Dr. Woodcox. *Id.* at 380. The administrative record contains medical records from Dr. Woodcox from May 2010 through March 2012, with an additional appointment in July 2013. *Id.* at 443–47, 515–22, 584. In his initial report dated May 5, 2001, Dr. Woodcox diagnosed Wright with status post-contusion strain-sprain in his left foot, symptomatic os tibialis externum in his left foot, and tenosynovitis in his posterial tibial tendon. *Id.* at 476. During that same appointment, Dr. Woodcox provided Wright with a cortisone injection into his left foot, advised him to continue with the Cam walker, and stated that Wright would likely require surgery to repair the injury. *Id.* Dr. Woodcox ultimately performed surgery on July 7, 2010. *Id.* at 454. During a later visit in March 2012, Dr. Woodcox described Wright as having "mild tendinosis" with "[n]o evidence of a tear" in his tendon. *Id.* at 514.

The ALJ properly considered and discounted the opinions of Drs. Pham and Woodcox. The ALJ noted that although his physicians continued to list left ankle internal derangement, his MRI was "relatively benign," showing only tendonosis without tear. *Id.* at 22. The ALJ also acknowledged that Wright had surgery on his left foot and ankle in 2010, but noted that Dr. Woodcox had expected Wright to be able to return to work in November 2010. *Id.* at 23, 455. The ALJ pointed to several oddities in the record. First, despite Dr. Woodcox's expectation that Wright should be able to return to work by November 2010, in December 2010, Wright continued to use crutches even though he was advised to discontinue use. *Id.* at 23, 382. Second, Dr. Morley, Wright's long-term treating pain management physician, noted, on February 7, 2011, that Wright's gait was "normal." *Id.* at 23, 483. Third, an examination by Dr. Morley in October 2010 showed full ('5/5') motor strength in his lower extremities. *Id.* at 23, 487.

13

As previously explained, a contradiction between a medical source's assessment of a claimant's disability and the source's other notes and observations provides a clear and convincing reason for rejecting that source's opinion. *Bayliss*, 427 F.3d at 1216. Here, the ALJ identified a number of significant contradictions between the opinions of Dr. Pham and Dr. Woodcox and the objective test results, as well as the opinions and observations of other doctors, such as Dr. Morley. Additionally, Dr. Woodcox's own records indicated that Wright should have been able to return to work less than one year after his injury. Thus, the objective evidence in the record was minimal and benign, and did not support Wright's disability claims as they relate to his left foot. Thus, the Court finds that the ALJ's rejection of the opinions regarding Wright's orthopedic and podiatric impairments is supported by more than substantial evidence and was based upon a permissible determination within the ALJ's province.

### C. The ALJ Articulated Specific, Clear and Convincing Reasons for the Adverse Credibility Determination Regarding Plaintiff

Wright next argues that the ALJ erred in failing to fully credit his subjective complaints of pain and other symptoms. Pl.'s MSJ 20. Wright makes two arguments in support of his position. First, he contends that the ALJ's finding that he was "non-compliant" by failing to attend four consultative examinations ("CEs") is not a "clear and convincing" reason to reject symptom evidence. Pl.'s MSJ 20. Second, Wright argues that the ALJ "failed to make 'clear and convincing' arguments based on substantial medical evidence of record to reject Mr. Wright's credible symptom evidence." *Id.* at 22. Defendant disagrees, and argues that the ALJ properly evaluated Wright's allegations of complete inability to work. Def.'s MSJ 2.

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Ghanim*, 763 F.3d at 1163 (internal quotation marks and citation omitted). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotation marks and citation omitted). "If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms

14

if she gives specific, clear and convincing reasons for the rejection." *Id.* (internal quotation marks and citation omitted). An ALJ may not simply "make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" *Brown-Hunter*, 806 F.3d at 493.

The parties first disagree on the proper standard. *See* Reply ISO Pl.'s MSJ 1, ECF 19; Def.'s Sur-Reply, ECF 23. Wright asserts that a recent Social Security Ruling ("SSR"), SSR 16-3p, eliminates the use and evaluation of the term "credibility."[4] Reply ISO Pl.'s MSJ 1. He contends that the arguments put forth by Defendant and the ALJ violate SSR 16-3p because they amount to "nothing more than a 'character evaluation.'" *Id.* at 2. Defendant, however, contends that SSR 16-3p is not applicable to the case at hand as it applies only to cases adjudicated on or after March 28, 2016. Def.'s Sur-Reply at 1. Moreover, Defendant argues that Wright has waived the argument because he did not raise it in his opening brief, which was filed three weeks after the agency issued SSR 16-3p.[5] *Id.*

At the time Defendant filed its sur reply, no court in the Ninth Circuit had addressed whether SSR 16-3p applied retroactively. *Id.* However, at least two district courts in the Circuit have since addressed the issue and found that SSR 16-3p does not apply retroactively. *See, e.g.*, *Smith v. Colvin*, No. 15-cv-1625, 2017 WL 388814, at *4 n.2 (D. Oregon Jan. 27, 2017); *Thayer v. Colvin*, No. 16-cv-545, 2017 WL 132450, at *7 (W.D. Wash. Jan. 13, 2017). Both cases relied on *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 214–15 & n.3 (1988) and *Garner v. Colvin*, 626 Fed. Appx. 699, 701 (9th Cir. 2015), to conclude that Congress has not authorized the Commissioner to engage in retroactive rulemaking. *Smith*, 2017 WL 388814, at *4 n.2; *Thayer*, 2017 WL 132450, at *7. The Court finds *Smith* and *Thayer* persuasive, and therefore concludes

---

[4] SSR 16-3p "eliminate[es] the use of the term 'credibility' from [the Social Security Administration's] sub-regulatory policy." SSR 16-3p (Mar. 16, 2016); *see Brown-Hunter*, 806 F.3d at 493 ("The governing Social Security rulings . . . are to be relied upon as precedents in adjudicating cases[.]"). Social Security Ruling 16-3p directs ALJs to focus on "subjective symptom evaluation" rather than opening "an examination [into] an individual's character." *Id.*
[5] The Court does not consider this argument because it determines that SSR 16-3p does not apply retroactively.

15

that SSR 16-3p does not apply retroactively. *See also Portlock v. Barnhart*, 208 F.Supp.2d 451, 461–62 (D. Del. 2002) (holding the application of a recently revised SSR to an applicant's pending claim on appeal would constitute an impermissible retroactive application of an agency rule). Thus, the fact the ALJ did not follow the standards articulated in SSR 16-3p is not a reason to reverse the ALJ's evaluation of Wright's testimony.

In any event, the ALJ offered specific, clear, and convincing reasons for discounting Wright's testimony, which were supported by substantial evidence in the record. *Brown-Hunter*, 806 F.3d at 488–89; SSR 16-3p. For example, the ALJ noted that the record contained "insufficient medical signs and findings to justify the claimant's extreme subjective complaints." AR 27. While a lack of objective medical evidence supporting a plaintiff's subjective complaints cannot provide the only basis to reject a claimant's subjective symptom testimony, it is one factor that an ALJ can consider in evaluating symptom testimony. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ can consider in his credibility analysis."). Here, Wright alleged that his condition limited his ability to perform every task listed in the function report, and he stated that he could not sit because of bulging disks in his back and could not work because of pain. AR 90, 270. Yet, the objective evidence suggested otherwise, which the ALJ noted. *See, e.g.*, *Id.* at 21 ("Despite complaints of severe radicular low back pain, MRI's have shown only 'mild' degenerative change without spinal stenosis."). Wright also alleges that he had disabling foot pain that required him to use crutches through at least 2012, yet objective studies of his left foot showed no significant abnormalities. *Id.* at 23, 378, 500. The lack of objective evidence of any significant limitation supported the ALJ's credibility finding. *See* Def.'s MSJ 3.

Second, the ALJ noted that Wright was "blatantly and unmistakably non-cooperative with the Social Security disability process." AR 27; *cf. Thomas*, 278 F.3d at 959 (finding the claimant's failure to cooperate during two examinations "compelling"). Specifically, the ALJ observed that although the prior ALJ ordered Wright to attend four consultative examinations, on the advice of counsel, Wright chose not to appear. AR 26. Although Wright's counsel has

16

insisted that ordering consultative examinations in this case was contrary to the law, the Ninth Circuit has recognized that an ALJ has "broad latitude" to order a consultative examination. *See id.*; *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001) (citation omitted). Further, as ALJ Beers warned, failure to attend a scheduled examination could lead to denial of a claim for disability. *See* 20 C.F.R. § 404.1518(a) (failing to attend examination without good reason may result in denial of claim); AR 51 ("[I]t [may] adversely affect you if you didn't go to the consultative exams."). The ALJ properly inferred that Wright declined to attend the scheduled examinations because he believed the doctors would find that his condition had improved from 2010. AR 26; *see Tommasetti*, 533 F.3d at 1040 ("[I]n reaching findings, the ALJ is entitled to draw inferences logically flowing from the evidence." (citations and internal quotation marks omitted)). Thus, the Court finds that the ALJ properly considered Wright's failure to cooperate in determining his credibility.

Finally, the ALJ noted that Wright "blatantly exaggerates his limitations for presumed secondary gain." AR 22. For example, Wright asserted that he could do essentially nothing—that he spends his days lying in bed with a towel over his eyes and with earplugs in his ears, had not prepared even a simple meal since his February 2010 injury, and could not do any household chores. *Id.* at 265, 267, 269. However, the ALJ observed that Wright was able to drive and maintain a romantic relationship. *Id.* at 22, 268. Moreover, the ALJ observed that Wright was seated during his hearing, despite statements that he could not sit for any amount of time. *Id.* at 25. Given the minimal objective evidence of any significant impairment and the conflicting evidence from Wright himself, the ALJ reasonably concluded that Wright exhibited a tendency to exaggerate. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (finding ALJ properly discredited plaintiff's testimony citing her lack of cooperation at the hearing, her presentation at the hearing, her tendency to exaggerate, her inconsistent statements, and her lack of cooperation during consultative examinations); *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) ("[T]he adjudicator may discredit the claimant's allegations based on inconsistencies in the testimony or on relevant character evidence.").

Because the ALJ set forth valid reasons for discounting Wright's credibility, all supported

17

by substantial evidence in the record, the Court finds that the ALJ properly evaluated the credibility of Wright's subjective complaints.

### D. Residual Functional Capacity Assessment

Wright contends that the RFC relied upon by the ALJ is not supported by substantial evidence in the record because it failed to account for non-exertional limitations of post-concussive disorder. Pl.'s MSJ 23. A Social Security claimant's RFC is what the claimant is capable of doing despite his or her mental and physical limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001). An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96–8p. The ALJ must consider all relevant evidence in formulating an RFC, and "an RFC that fails to take into account a claimant's limitations is defective." *Valentine*, 574 F.3d at 690. The ALJ's findings may be set aside if not supported by substantial evidence. *McCartey v. Massanari*, 298 F.3d 1072, 1075 (9th Cir. 2002). An ALJ may omit limitations arising out of a claimant's subjective complaints only if the subjective complaints have been properly discredited. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1040–41 (9th Cir. 2007) (RFC excluding subjective limitations was not supported by substantial evidence where the ALJ did not provide clear and convincing reasons for discrediting claimant's testimony).

Here, the ALJ found that Wright has the RFC to "perform light work as defined in 20 CFR 404.1567(b) except but the claimant would be restricted to only 4 hours of standing and walking in an 8-hour workday, and no more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling." AR 24. The RFC did not account for the non-exertional limitations of post-concussive disorder, such as exposure to light and computer screens, because the ALJ did not find Wright to be credible and the ALJ validly discounted the opinions of the doctors reporting such limitations. *Id.* at 27. Moreover, in determining the RFC, the ALJ gave the most weight to the opinions of the DDS physicians who, after considering the entirety of the record including the symptoms that Wright claims the ALJ did not consider, determined that Wright could perform light work. *Id.* at 103–05, 117–19.

Accordingly, the ALJ properly considered Wright's medically determinable medical impairments in his RFC assessment.

### E. Conclusion

This Court's task in performing the very limited review permitted by law is to determine whether the ALJ applied the correct legal standards and whether his written decision is supported by substantial evidence in the record. If the evidence could support either a favorable or an unfavorable outcome for Wright, the ALJ's decision must be upheld. *Rounds*, 807 F.3d at 1002. In this case, the ALJ applied the correct legal standards and his findings are supported by substantial evidence.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff Eric Wright's motion for summary judgment is DENIED; and
2. Defendant's motion for summary judgment is GRANTED.

The Clerk is instructed to close the file.

Dated: February 22, 2017

_____
BETH LABSON FREEMAN
United States District Judge